UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No. 12-1709 (BAH) |
| v. | Judge Beryl A. Howell |
| CIERA L. BLYTHER, *et al*., | |
| Defendants. | |

**MEMORANDUM OPINION**

This case stems from an effort by the interpleader plaintiff, Metropolitan Life Insurance Company ("MetLife" or "the plaintiff"), to ensure that the life insurance benefits of a deceased federal employee, Geneva Blyther, are paid to the proper beneficiaries. Pending before the Court are three motions: MetLife's Motion for Interpleader Relief, ECF No. 34; and interpleader-defendant Tiana N. Blyther's Motions for Reconsideration, ECF No. 41, of the Court's prior Order, ECF No. 36, dismissing the defendants' counterclaims and to Amend her Pleading, ECF No. 43. For the reasons set forth below, the interpleader plaintiff's motion will be granted and Ms. Blyther's two motions will be denied.

**I.      BACKGROUND**

    **A.      Factual History**

On November 15, 2010, Geneva Blyther ("Geneva[1]") died from artherosclerotic cardiovascular disease, leaving behind three living children and at least eight living

---

[1] Due to the number of people with the same last name involved in this matter, the Court will refer to the deceased and the interpleader defendants by their first names on second reference.

grandchildren.  *See* Compl. ¶¶ 2–13, ECF No. 1; Feb. 1, 2013 Hr'g Tr. ("Hr'g Tr.") 17:21–18:15.[2]  A long time Federal employee, Geneva was covered under the Federal Employees Group Life Insurance ("FEGLI") plan and had a life insurance policy valued at $64,000.  Compl. ¶¶ 16, 23.  On the death of a FEGLI-covered federal employee, "the life insurance benefits from her coverage under the FEGLI policy . . . bec[o]me payable to the proper beneficiary."  *Id*. ¶ 23.  The life insurance benefits flow first to those individuals named "in a signed and witnessed writing received before death in the employing office."  5 U.S.C. § 8705(a) (2006).

On the face of the beneficiary designation forms, notice is provided that the designations on the most recent form will supersede any previous forms.  *See, e.g.*, Compl. Ex. A., ECF No. 1-1 at 1 (including above signature line declaration that the signatory is "canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and [is] now designating the beneficiary(ies) named above).  Thus, the most recent valid beneficiary form is the operative form.  *See id.*

Over her lifetime, Geneva completed three FEGLI beneficiary forms.  The first, executed on January 10, 1983, named Geneva's five children as her beneficiaries, each taking an equal share of the benefits: Sharron Blyther ("Sharron"), Calvin Blyther, Jr. ("Calvin"), Joseph Evans Blyther ("Joseph"), Germany Derris Blyther ("Germany"), and Tiana Nicole Blyther ("Tiana").  Compl. Ex. C, ECF No. 1-1. The second beneficiary form, signed on September 24, 2004, named as beneficiaries six persons: Germany, Tiana, Khadaria Bush ("Bush"), J.N.,[3] M.L.M., and Crystal Blyther ("Crystal").  *Id.*, Ex. B, ECF No. 1-1. The September 24, 2004 form directs that

---

[2] The plaintiff filed a First Motion to Amend/Correct complaint in error on November 29, 2012.  *See* Pl.'s First Mot. Amend/Correct Compl., ECF No. 21.  This motion was apparently entered in error and withdrawn at the plaintiff's request, *see* Docket Entry of Nov. 29, 2013, and, thus, the operative complaint in this case is the original complaint, filed October 18, 2012.  *See* Compl., ECF No. 1.
[3] The minor beneficiaries are referenced in this Memorandum Opinion by their initials, but their full names are spelled out on the beneficiary forms.

2

each of the six beneficiaries take "1/5%" of the policy benefits. *Id.* Taken literally, the September 24, 2004 form standing alone would have disbursed only 1.2 percent of Geneva's life insurance benefits.[4] Alternatively, this form could be interpreted as intended to give one-fifth of the total life insurance benefits to each beneficiary, which would result in disbursement of 120 percent of the benefits.

Finally, on September 30, 2004, Geneva signed a third life insurance beneficiary form, naming as beneficiaries three additional persons, C.M.B., Ciera L. Blyther ("Ciera"), and A.B., with each taking "1/5" of the life insurance benefits. *Id.*, Ex. A. This form, standing alone, could be interpreted as disbursing only 60 percent of Geneva's life insurance benefits, as each of the beneficiaries was to receive "1/5" of the proceeds. *Id.*

On December 3, 2010, Tiana filed a claim for Geneva's FEGLI benefits. Compl. ¶ 24. On December 22, 2010, Tiana wrote a letter to MetLife explaining that Geneva's intent was for the September 24 and September 30, 2004 forms to be read together, designating a total of nine beneficiaries for the life insurance policy. Compl. ¶ 25; Ex. F, ECF No. 1-3 at 2. According to the letter, Geneva wished to name more beneficiaries than the number of lines on a standard beneficiary form allowed and consequently filled out two beneficiary designation forms and submitted them. Compl. Ex. F. at 2. The second form "was dated by Ms. Doris E. Taylor, a Human Resources Representative for [Geneva's] employer" and given a different date Geneva wrote on the first form. Compl. Ex. F at 2. Thus, the second form, which Tiana asserts is merely a second page to the first form, should have been given the same date as the first form,

---

[4] The beneficiary form requires the signatory to fill in the "Percent or fraction designated" for each beneficiary. Compl. Ex. A., ECF No. 1-1. Geneva wrote "1/5%" for each of the six beneficiaries listed, which could be interpreted to indicate one-fifth of one percent, or 0.2 percent of the proceeds for each beneficiary. Interpreted in this manner, the beneficiary form would only disburse 1.2 percent of the total benefits from Geneva's life insurance policy.

designating nine people[5] as beneficiaries with all sharing equally in the benefits of Geneva's policy. *Id.*

The plaintiff avers that if the Court accepts that "the September 30, 2004 beneficiary form is in fact page 2 of the September 24, 2004 beneficary form, the FEGLI Benefits would then be payable in equal shares" to the nine beneficiaries listed on the two forms. Compl. ¶ 29.

**B.    Procedural History**

MetLife filed an interpleader action, pursuant to 5 U.S.C. § 8715 (2006),[6] on October 18, 2012, averring that it was unable to determine which of the beneficiary forms, or which combination thereof, were valid. Compl. ¶ 26. MetLife named as interpleader defendants every beneficiary listed on all three beneficiary forms Geneva signed, for a total of twelve people. *See* Compl. Ex. A–C, ECF No. 1-1. On the same date, MetLife also moved for leave to deposit the proceeds of the insurance policy in the Registry of the Court. *See* Mot. Leave Deposit Interpleader Prop. Reg. Ct., ECF No. 3, at 1. The funds, plus interest accrued, were deposited in the Registry of the Court on January 16, 2013. *See* Docket Entry of Jan. 16, 2013.

On November 5, 2012, MetLife filed a redacted Exhibit E to its complaint which removed references to Tiana's social security number which had been included in the unredacted version of the exhibit. *See* Redacted Document, ECF No. 5. This version was added to the complaint's docket entry on November 6, 2012. *See* Docket Entry of October 18, 2012 ("Additional attachment(s) added on 11/6/2012" reflecting the addition of the redacted document to the complaint).

---

[5] These nine people are: Germany, Tiana, Bush, J.N., M.L.M., Crystal, C.M.B., Ciera, and A.B.
[6] The plaintiff did not specify whether it was filing an interpleader action under 28 U.S.C. § 1335 or under Fed. R. Civ. P. 22. The particular procedural device, however, makes no difference to the outcome of this case.

4

In their answer to the interpleader complaint, the defendants,[7] who are proceeding *pro se*, *see* Notices to Proceed Pro Se, ECF Nos. 6–11, 20, essentially confirmed the facts in MetLife's complaint, noted that two of Geneva's five children, Calvin and Joseph, predeceased Geneva, and corrected several dates mentioned in the complaint. *See* Answer, ECF No. 12, ¶¶ 12–13, 16–17. The Answer also raised two "defenses,"[8] as well as seven counterclaims. *See* Defenses & Counterclaims ¶¶ 35–78. The first counterclaim alleged "Abuse of Federal Process" based on the filing of the interpleader action and the remaining counterclaims alleged "Gross Negligence" based on the inclusion in the complaint of the full names of four minor defendants and the inclusion in exhibits to the complaint of the dates of birth of Geneva and Tiana, and Tiana's social security number. *See* Counterclaims ¶¶ 51–78. In total, the defendants' counterclaims demanded nearly $200 million in damages and various types of injunctive relief. *See* Counterclaims ¶¶ 51–78. MetLife subsequently moved to dismiss the defendants' counterclaims and the Court entered an appropriate Order advising the *pro se* defendants of the consequences for failing to respond to the plaintiff's legal arguments. *See* Order, ECF No. 31 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) and *Neal v. Kelly*, 963 F.2d 453, 456 (D.C Cir. 1992)).

MetLife also moved to seal the complaint and related docket entries and change the caption of the case to designate the minor defendants only by their initials. *See* Mot. Seal Document and Amend the Court's Docket, ECF No. 27 at 2. The Court, in a sealed Order, granted this motion and directed the parties to file a joint Meet and Confer report prior to a status

---

[7] The interests of the minors in this action are being represented by their legal guardians who are also named interpleader defendants. C.M.B.'s legal guardian, Antoinette, who was not an original interpleader defendant, filed a Motion to Intervene on November 21, 2013, ECF No. 19, which was granted by sealed Order on December 17, 2012. ECF No. 29.

[8] As there are no claims being asserted against the named defendants in an interpleader action, there is no need for "defenses."

conference to attempt to determine the appropriate allocation of the FEGLI benefits at issue. *See* Order, ECF No. 29 at 2.

Prior to filing the Meet and Confer report, one of the defendants, Tiana, filed an "Opposition to Plaintiff's Motion to Dismiss Defendants' Counterclaim with Prejudice," which consisted of additional counterclaims (numbered Four, Six, and Seven) for "Violations of the Privacy Act of 1974" and "Infliction of Emotional Distress" in addition to "Gross Negligence." Def.'s Opp. Pl.'s Mot. Dismiss, ECF No. 33, at 7, 9, 13. The "Opposition" contained no legal arguments.

In January, 2013, the parties filed a joint Meet and Confer statement, which, significantly, expressly stated that the defendants had agreed that Geneva's life insurance benefits should be distributed equally among the nine people listed on the September 24 and September 30, 2004 beneficiary designation forms. Meet and Confer Statement, ECF No. 32 at 5–6. Shortly thereafter, the plaintiff filed a Motion for Interpleader Relief, to which the interpleader defendants inexplicably did not consent. Pl. Mot. Interpleader Relief ¶ 10, ECF No. 34.

In order to resolve expeditiously the outstanding motions, claims, and the distribution of the life insurance policy benefits, the Court held a status conference on February 1, 2013, which was attended by all of the defendants who had reached the age of majority and plaintiff's counsel. The Court took a number of steps at this status conference. First, the Court dismissed with prejudice all of the defendants' counterclaims on the merits and as conceded. *See* Hr'g Tr. 3:16 – 4:18, 9:7–8; 35:6–23. Second, the Court ordered MetLife to provide additional information regarding the potential lapsing of benefits for the predeceased children designated on the January 10, 1983 beneficiary form. Hr'g Tr. 15:24–25, 16:1–11.

Third, to address the concerns raised by the defendants about the potential disclosure of personally identifiable information, the Court ordered the plaintiff to retrieve from its courier company the two summons packages sent to the two deceased potential beneficiaries, Calvin and Joseph, and to notify the Court upon retrieval. *Id.* at 14:23–25; 15:1–21. Furthermore, the Court ordered the plaintiff to provide a summary of the plaintiff's efforts undertaken to "scrub" the Internet of the offending information to address the defendants' concerns about public access to the full names of the four minors named in the original complaint as well as Tiana's social security number in an exhibit to that complaint. *Id.* at 49:23–25; 50:1–4.

Finally, the Court ordered the defendants to submit, in writing, any opposition to the plaintiff's Motion for Interpleader Relief by February 15, 2013. Hr'g Tr. 24:3–6. The Court impressed upon the *pro se* defendants that "[i]f you don't submit something by February 15th, I will, in all likelihood grant the motion as conceded because there's been no opposition filed." *Id.* at 24:18–21. No opposition was filed by the defendants by the deadline set by the Court.

Following the status conference, the plaintiff submitted two status reports and a letter regarding its efforts to remedy the disclosure of the limited personally identifiable information in the form of the minors' full names and Tiana's social security number. *See* Status Report (Feb. 4, 2013), ECF No. 37; Status Report (Feb. 11, 2013), ECF No. 39; Status Report (Feb. 14, 2013), ECF No. 40. Specifically, the plaintiff reported that the summons packages sent to the two deceased potential beneficiaries had been returned to the plaintiff and shredded, Status Report (Feb. 4, 2013) at 1, and that "the only website that [the plaintiff] could find that displayed [the defendants' personal information] on the Internet," was asked to and did remove the private information. *See* Status Report (Feb. 11, 2013) at 1.

On February 13, 2013, Tiana sent an *ex parte* email to then-Chief Judge Royce Lamberth alleging, *inter alia*, that she had been denied her due process in the dismissal of her counterclaims. *See* Mot. for Reconsideration, ECF No. 41. The Court docketed this email as a Motion for Reconsideration. Tiana also filed two additional motions, a "Motion to Amend Pleading in Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims with Prejudice," ECF No. 43, and a letter dated August 21, 2013, addressed to Chief Justice John Roberts of the United States Supreme Court, raising essentially the same allegations as in Tiana's February 13 email to Judge Lamberth, as well as claiming that the full names of the four minor defendants named in the complaint were available on another website, rfcexpress.com. *See* Mot. for Order, ECF No. 54, at 3, Ex. 3. Tiana demanded that the Supreme Court "ensur[e] Judge Howell's orders mandating the cleanup of the privacy information breach is enforced within 5 business days."[9] *Id.* at 3.

In response to Tiana's Motion for an Order, the Court ordered the plaintiff to "submit to the Court a report detailing the plaintiff's efforts to ensure removal of the minor defendants' names from the entry for this case" on the website where Tiana had seen them. Minute Order dated August 27, 2013.[10] The next day, the plaintiff filed a status report with the Court stating it had contacted the website in question and secured removal of the entire case from the website's database. *See* Status Report (Aug. 28, 2013), ECF No. 55 at 1.

Thus, pending before the Court are three motions: the plaintiff's Motion for Interpleader Relief, Tiana's Motion for Reconsideration and Tiana's Motion to Amend.

---

[9] The Court docketed this *ex parte* communication as a "Motion for an Order," with two of the attachments accompanying the motion, which contained the unredacted names of the four minors in this case, filed under seal.
[10] This Minute Order terminated Tiana's Motion for an Order.

8

## II. LEGAL STANDARD

### A. Interpleader Relief

An interpleader action "'allows a party exposed to multiple claims on a single obligation or property . . . to settle the controversy and satisfy his obligation in one proceeding.'" *RLI Ins. Co. v. All Star Transp., Inc.*, 608 F.3d 848, 849 (D.C. Cir. 2010) (quoting *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 583 (D.C. Cir. 1993)). This type of action is "only available where there is a single finite obligation at issue." *Id.* at 850. Interpleader relief is an equitable remedy designed to achieve an orderly distribution of a limited or finite fund. *See Star Ins. Co. v. Cedar Valley Express, LLC*, 273 F. Supp. 2d 38, 40 (D.D.C. 2002). "Where a party in control of contested property, the stakeholder, makes no claim on the property and is willing to release it to the rightful claimant, interpleader allows him to put the money or other property in dispute into the court, withdraw from the proceeding, and leave the claimants to litigate between themselves." *Commercial Union Ins. Co.*, 999 F.2d at 583 (D.C. Cir. 1993); *see also Guarantee. Co. of N. Am. USA v. Barrera*, 908 F. Supp. 2d 39, 41 (D.D.C. 2012) ("Where a court grants interpleader relief, the plaintiff may be discharged from further court proceedings, provided the plaintiff does not assert an interest in the distribution of the disputed property.").

### B. Motion for Reconsideration

A Motion to Alter Judgment under Federal Rule of Civil Procedure 59(e) is discretionary and "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "A motion for reconsideration . . . is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *SmartGene, Inc. v. Adv. Biological Labs., SA*, 915 F. Supp. 2d 69, 72

(D.D.C. 2013) (internal quotation marks and citations omitted). Rule 59(e) has a "high standard for relief," *Jung v. Ass'n of Am. Med. Colls.*, 184 Fed. Appx. 9, 13 (D.C. Cir. 2006), and granting a Rule 59(e) motion is generally disfavored in the absence of "extraordinary circumstances." *See Niedermeier v. Office. of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

### C. Motion to Amend Pleadings

"[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone*, 76 F.3d at 1208. While leave to amend a complaint should be freely granted when justice so requires, *see* FED R. CIV. P. 15(a)(2), the Court may deny a motion to amend if such amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *James Madison Ltd. By Hecht v. Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996). "An amended complaint would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.,* 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (citation omitted).

## III. DISCUSSION

### A. Plaintiff's Motion for Interpleader Relief

The plaintiff correctly points out that this case was "initially a routine interpleader action." Pl.'s Opp. Mot. Reconsideration, ECF No. 45 at 1. Twelve potential beneficiaries, reflecting each beneficiary listed on all three of Geneva's executed beneficiary forms, were named in the action and a potential thirteenth beneficiary, Tynisha Blyther ("Tynisha"), was revealed orally by Tiana at the status conference on February 1, 2013. *See* Hr'g Tr. 17:24–18:15. The Meet and Confer statement indicated that the named defendants and intervenor-defendant proposed to divide Geneva's life insurance benefits evenly between the nine beneficiaries named

10

on the September 24 and 30, 2004 beneficiary forms in accordance with Geneva's wishes. *See* Meet and Confer Statement at 5–6. The only person identified by the parties who could have an interest in the life insurance benefits who is not represented in this action is Tynisha.

According to the terms of Geneva's life insurance policy, "[i]f any designated Beneficiary shall predecease the Employee, the rights and interest of such Beneficiary shall thereupon automatically terminate." Status Report (Feb. 14, 2013), Ex. E, ECF No. 40-5 at 5. Tynisha was not a named beneficiary on either of the 2004 beneficiary forms, *see* Compl. Ex. A, B, meaning her only possible interest would have been derived from her father, Joseph's, interest stemming from his listing as a beneficiary on the January 10, 1983 form. By the terms of the policy, those interests terminated upon the death, on May 29, 1995, of her father who predeceased Geneva. *See* Answer ¶ 13, Ex. H, ECF No. 12-1, at 2. Therefore, regardless of which form the Court could find valid, Tynisha has no cognizable interest in the proceeds of Geneva's policy, and she need not be represented in this action to resolve the distribution of funds.

Consequently, the Court is satisfied that the defendants in this interpleader action represent all of the parties who could potentially have an interest in the subject of the interpleader. The Court is further satisfied that construing the September 30, 2004 beneficiary form as a second page of the September 24, 2004 beneficiary form effectuates the decedent's intent. After reviewing the supplemental documents filed by the plaintiff in response to the Court's February 1, 2013 order and in light of there being no opposition or objection filed by the defendants,[11] the Court grants the plaintiff's motion. In light of the evidence provided and the defendants' agreement, *see* Meet and Confer Statement at 5–6, the Court orders the distribution

---

[11] The defendants were strictly warned at the Feb. 1, 2013 hearing that the failure to file, in writing, their opposition to the plaintiff's interpleader relief would most likely result in the granting of that motion. Feb. 1, 2013 Hr'g Tr. 24:18-21.

of the funds held in the Registry of the Court in equal shares to the nine beneficiaries listed on the September 24 and 30, 2004 beneficiary designation forms in accordance with the decedent's wishes.

B.     **Defendant's Motion for Reconsideration**

The Court has construed Tiana's email to then-Chief Judge Lamberth as a Motion for Reconsideration in deference to the defendant's *pro se* status. In this Circuit, a party moving for reconsideration under Rule 59(e) must show an "intervening change of law," "present . . . new evidence that was not previously available," or "establish an error of law or fact in the court's original opinion." *Messina v. Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006) (internal quotation marks omitted). The defendant has failed to do so with regard to the dismissal of the defendants' counterclaims.

As the Court explained in its ruling on February 1, 2013, the plaintiff's first counterclaim for abuse of process was dismissed because the plaintiff followed the "precise procedure allowed by law" when a dispute such as this, involving multiple potential claimants to a sum certain, arises. *See* FED. R. CIV. P. 22. Tiana points to no change in the law, presents no new evidence, and fails to show any error of law in regard to this point. Therefore, the motion for reconsideration of the dismissal of Counterclaim One is denied.

The remaining counterclaims were for "gross negligence" pertaining to the disclosure in the complaint or its exhibits of the names of four minor beneficiaries, *see* Counterclaim 2, ¶ 51–53; Counterclaim 3 ¶ 55–57; Counterclaim 4 ¶ 59–61; Counterclaim 5 ¶ 63–65, the birthdate of the decedent, *see* Counterclaim 6 ¶ 67–69, and Tiana's birthdate and social security number. *See* Counterclaim 7 ¶71–73. Each disclosure in the complaint filed on the public docket was remedied in short order. The complaint, including all exhibits, was sealed less than two months

after its filing. *See* Sealed Order, ECF No. 29 at 1–2. The plaintiff subsequently made successful efforts to locate and shred two summons packages and have the website Justia.com remove any reference to the names of the four minors in the case title. *See* I.B. Furthermore, when Tiana notified the Court that another website showed the complaint reflecting the full names of the four minors, the plaintiff secured removal of the information from the Internet in less than 12 hours. *See* Status Report (Aug. 28, 2013) at 1. The Court is satisfied that the plaintiff has complied fully and expeditiously with the Court's directions to locate and destroy the summons packages sent to the two deceased defendants and to remove reference at Justia.com and rfcexpress.com to complaint showing the full names of the four minor defendants. *See* Status Report (Feb. 11, 2013) at 1–2; Status Report (Aug. 28, 2013) at 1–2.

Set against those facts, the defendants' counterclaims for gross negligence were properly dismissed because the actions taken by the plaintiff in this case do not rise to the level of gross negligence under District of Columbia law. Gross negligence is defined as "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Capitol Entm't Servs., Inc. v. McCormick*, 25 A.3d 19, 28 (D.C. 2011); *see also District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997) ("[W]e have defined the general concept of gross negligence as 'the failure to exercise even slight care,' and 'such negligence as would shock fair-minded men.'") (quoting *Shea v. Fridley*, 123 A.2d 358, 363 (D.C. 1956)).

The plaintiff's actions in this case do not exhibit "the failure to exercise even slight care." *Walker*, 689 A.2d at 44. As an initial matter, there was no indication on any of the disclosure forms filed by Geneva that any of the beneficiaries were minors. *See* Compl. Ex. A, B (providing no space to declare the birthdates of the beneficiaries); *see also* Pl.'s Mot. to Seal ¶ 3,

("Based upon information available to Plaintiff, there was absolutely no indication in the claim file that would have led Plaintiff to believe that any named beneficiaries of the Decedent were minors at the time of filing this interpleader action."); Pl.'s Mem. Supp. Mot. Dismiss Def.'s Counterclaims ("Pl.'s Mot. Dismiss"), ECF No. 30-1, at 3. Thus, the plaintiff had no basis to know of the minor status of any of the beneficiaries, let alone any "high degree of danger" sufficient to support the claims of gross negligence in the short-term disclosure of their full names. *See Capitol Entm't Servs., Inc.*, 25 A.3d at 28. Moreover, the exhibits filed with the complaint were partially redacted, indicating that the plaintiff did show at least "slight care" toward preventing the disclosure of personally identifiable information. *See* Compl. Ex. A–D. The plaintiff also acted expeditiously when it was notified that Tiana's social security number escaped redaction in the complaint. *See* Redacted Document, Ex. E; *see also* Pl.'s Mot. Dismiss at 3.

In short, Tiana has presented no new evidence, intervening change in the law, or pointed out a manifest error in the Court's previous decision regarding dismissal of Counterclaims Two through Seven. Her motion for reconsideration is therefore denied.

### C. Tiana's Motion to Amend

In Tiana's Motion to Amend, she asserts four new counterclaims claiming damages for alleged violations of the Privacy Act of 1974. *See* Def.'s Mot. Amend Pleading ¶¶ 17, 29, 38, 39. As the Court explained in its February 1, 2013 ruling, the Privacy Act does not apply to government contractors. *See, e.g.*, *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985) ("The private right of civil action created by the Act is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against . . . private entities.") (citing *Irwin Mem'l Blood Bank of the S.F. Med. Soc'y v. Am.*

*Nat'l Red Cross*, 640 F.2d 1051, 1057-58 (9th Cir. 1981), and *United States v. Miller*, 643 F.2d 713, 715 n.1 (10th Cir. 1981); *Patterson v. Austin Med. Center*, No. CIV 97-1241, 1998 WL 35276064, at *2, (D. Minn. Jan. 28, 1998) (stating the Privacy Act, 5 U.S.C. §552a, "does not create a private cause of action against a government contractor for violations of the Act."). Thus, as a matter of law, the four Privacy Act counterclaims are not viable against MetLife and amending the counterclaim would be futile. *See In re Interbank Funding Corp. Securities Litigation*, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."); *Virtue v. Int'l Broth. Of Teamsters Retirement & Family Protection Plan*, 893 F. Supp. 2d 46, 48 (D.D.C. 2012) ("It is clear . . . that amendment should not be permitted if … the proposed amendment would still render the complaint deficient."); *Fleck v. Cablevision VII, Inc.*, 799 F. Supp. 187, 192-93 (D.D.C. 1992) (denying motion to amend complaint as futile due to legal insufficiency of amendment). The "infliction of emotional distress" allegations are merely purported justifications for damages discussed in the counterclaims already discussed, not stand alone counterclaims. *See* Def.'s Mot. Amend Pleading, ¶¶ 16, 24, 32, 41. Since amending the underlying claims to which these allegations are attached would be futile, amending the "infliction of emotional distress" counterclaims would also be futile. Therefore, Tiana's Motion to Amend her Pleading is denied.

## IV. CONCLUSION

In light of the foregoing, the Court finds that the plaintiff has no further interest in this matter as a stakeholder and that the interpleader-defendant Tiana N. Blyther's motions are without merit. Accordingly, the plaintiff's Motion for Interpleader relief is GRANTED and the interpleader-defendant Tiana N. Blyther's two outstanding motions are DENIED. Furthermore,

the Court orders disbursement of the funds deposited by MetLife in the Registry of the Court to the nine beneficiaries named on the September 24 and 30, 2004 beneficiary forms in equal shares.

An appropriate Order accompanies this Memorandum Opinion.


Date: August 29, 2013

                                                                                                    _____
                                                                                                    BERYL A. HOWELL
                                                                                                    United States District Judge